UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI

In re:
7 AT BLUE LAGOON (1), LLC
In re:
7 AT BLUE LAGOON (2), LLC
Debtors
_______________________________/

Case 25-21286 RAM

Jointly administered with
Case 25-21287 RAM

# DISCLOSURE STATEMENT

***Table of Contents***


I. **INTRODUCTION** **page** **2**
- A. **Purpose of This Document**
- B. **Deadlines for Voting and Objecting;; Date of Plan Confirmation Hearing**
- C. **Disclaimer**

II. **BACKGROUND** **3**
- A. **Description and History of the Debtor's Business**
- B. **Insiders of the Debtor**
- C. **Management of the Debtor Before and During the Bankruptcy**
- D. **Events Leading to Chapter 11 Filing**
- E. **Significant Events During the Bankruptcy Case**
- **F.** **Post--Confirmation Management and Compensation and New Value**
- G. **Projected Recovery of Avoidable Transfers**
- H. **Claims Objections**
- I. **Current and Historical Financial Conditions**

III. **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** **5**
- A. **What is the Purpose of the Plan of Reorganization?**
- B. **Unclassified Claims**
  - 1. *Administrative Expenses*
  - 2. *Priority Tax Claims*
- C. **Classes of Claims and Equity Interests**
  - 1. *Classes of Secured Claims*
  - 2. *Classes of Priority Unsecured Claims*
  - 3. *Class[es]of General Unsecured Claims*
  - 4. *Class[es] of Equity Interest Holders*
- D. **Means of Implementing the Plan**
- E. **Risk Factors**
- F. **Executory Contracts and Unexpired Leases**

G. **Tax Consequences of Plan**

IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES** **7**
A. **Who May Vote or Object**
B. **Votes Necessary to Confirm the Plan**
1. *Votes Necessary for a Class to Accept the Plan*
2. *Treatment of Nonaccepting Classes*
C. **Liquidation Analysis**
D. **Feasibility**
1. *Ability to Initially Fund Plan*
2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

V. **EFFECT OF CONFIRMATION OF PLAN** **10**
A. **Discharge Of Debtor**
B. **Modification of Plan**
C. **Final Decree**

**Exhibit A** Liquidation Analysis
**Exhibit B** Funds needed for confirmation on the effective date of the Plan
**Exhibit C** Ballot

## I. INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of the Debtors. This Disclosure Statement contains information about the Debtors and describes the joint plan (the "Plan") filed by Debtors**.** A full copy of the Plan is served with this disclosure statement. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed in this Disclosure Statement. General unsecured creditors are classified in Class, and will receive a quarterly distribution of a dividend of their allowed claims.

### A. Purpose of This Document

This Disclosure Statement describes:

(a) Pre− and post−petition financial performance;
(b) Reasons for filing Chapter 11;
(c) Steps taken by the Debtor since filing of the petition to facilitate its reorganization;
(d) Projections reflecting how the Plan will be feasibly consummated;
(e) A liquidation analysis; and
(f) A discussion of the Federal tax consequences as described in section 1125(a)(1) of the Bankruptcy Code.

This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

1. *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan.*

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place pursuant to the court order served herewith.

2. *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, you vote on the enclosed ballot and return the ballot as instructed on the ballot. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date specified in the ballot or it will not be counted.

3. *Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon counsel as required in the court order served herewith.

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact **Joel Aresty 305-904-1903 or Aresty@icloud.com.**

### C. Disclaimer

***The Court has to approve this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

## II. BACKGROUND -- Description and History of the Debtor

A. **Description and History of the Debtor's Business**
B. **Insiders of the Debtor**
C. **Management of the Debtor Before and During the Bankruptcy**
D. **Events Leading to Chapter 11 Filing History**

Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 US Code on 9/25/25.

Deadline for all creditors to file a proof of claim (except governmental units): Filing deadline: 12/5/25

Deadline for governmental units to file a proof of claim: Filing deadline: 3/25/26.

Description of debtor's business: debtor owns development land at 4865 NW 7th Street, Miami, FL 33126 appraised 9/10/25 at $111,000,000. Land is 6.9 acres abutting Blue Lagoon Lake near airport. Zoned T6-12-L Urban Core Limited, which permits single family, multifamily residences, hotels, bed & breakfasts, inns, and office space permitted in a limited capacity. As per owner, the subject is planned for development of 884 apartments and two hotel pads developable as follows: 247 units and 186 units totaling 1317 units within the project's entirety. The development will include a mix of affordable and market rate units.

Locations of debtor's operations and whether the business premises are leased or owned: owns vacant land above but business operations are at 3187 Royal Road Miami, FL 33133.

Reasons for filing chapter 11: Debtor is working to refinance property, but lender was forcing foreclosure sale 9/29/25 disrupting that process.

List of officers and directors, if applicable, and their salaries and benefits at the time of filing and during the 1 year prior to filing:
Caroline Weiss sole manager and member - no salary or benefits.
Adeena Weiss her daughter was appointed representative 11/3/25

Debtor's fiscal or calendar year to date gross income and the debtor's gross income for the calendar or fiscal year prior to the filing of this petition: 2025: $0 2024:$0.

Obligations owed to priority creditors including priority tax obligations: $0

**E. Significant Events During the Bankruptcy Case and Plan – no substantive consolidation**

The plan will be implemented as required under §1123(a)(5) of the Code: by sale or refinancing of the Property at 4865 NW 7th Street, Miami, FL 33126.

Real Estate Broker Jason Welt was appointed 12/23/25 DE 83.

The Sale or refinancing of the Property constitutes a transfer under the Chapter 11 Plan confirmed under section 1129 of the Bankruptcy Code. As such, the Sale or refinancing shall not be subject to tax under any law imposing stamp tax or similar tax, in accordance with section 1146(a) of the Bankruptcy Code. This Sale or refinancing Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Notice is given to Florida Department of Revenue Bankruptcy Unit P.O. Box 6668 Tallahassee, FL 32314-6668 and email DOR@floridarevenue.com , re the exemption of this sale from doc stamps.

**F. Post--Confirmation Management and Compensation**. The officers and directors, and their salaries and benefits post confirmation will be the same as was authorized during this chapter 11: $0.

**G. Projected Recovery of Avoidable Transfers or Litigation**

The Debtor reserves the right to pursue preference, fraudulent conveyance, or other avoidance actions.

### H. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non--appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### I. Current and Historical Financial Conditions

The debtor's annual gross revenues are $0

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

Debtor's estimated administrative expenses, and their proposed treatment. Joel Aresty counsel for debtor in possession has an administrative claim for fees and costs estimated at $50,000 in excess of retainer paid.

1. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

## C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan

## D. Means of Implementing the Plan

### 1. *Source of Payments*

Payments and distributions under the Plan will be funded by the debtor by the sale or refinancing of the property.

## E. Risk Factors

The proposed Plan has the following risk factors: Debtor's ability to fund could be affected by failure refinance or sell the property.

## F. Assumption of Executory Contracts and Unexpired Leases

The Plan, in part VI, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

## G. Tax Consequences of Plan

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The Bankruptcy Code 11 USC 1125 (a) requires a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan

Tax Consequences to Creditors

Holders of Claims receiving cash generally will recognize gain or loss on the exchange equal to the difference between the holder's basis in the Claim and the amount of cash received that is not allocable to interest. The character of any recognized gain or loss will depend upon the status of the Creditor, the nature of the Claim in its hands and the holding period of such claim.

If a Creditor has treated a Claim as wholly or partially worthless and been allowed and received a tax benefit due to a bad debt deduction, the Claim holder will include the amount of cash received in income to the extent such cash exceeds the holder's remaining tax basis in the Claim.

Holders of Claims may be entitled to installment sales treatment or other deferral with respect to the distribution they receive subsequent to the Effective Date. Holders of Claims may already have claimed partial bad debt deductions with respect to their Claims. The IRS may take the position that holders of Allowed Claims cannot claim an otherwise allowable further loss in the year in which their Claim is allowed because such claimants could receive further distributions. Thus, a holder of a Claim could be prevented from recognizing a loss until the time when its Claim has been liquidated and distributions have been completed. If a holder of a Claim is permitted to recognize a loss in the year of the Effective Date by treating the transaction as a "closed transaction" at such time, such holder may recognize income on any subsequent distribution.

The Debtor will comply with all applicable reporting requirements of the Internal Revenue Code.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith;; at least one impaired class of claims must accept the plan, without counting votes of insiders;; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan;; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims

in each of these classes are therefore entitled to vote to accept or reject the Plan.

### B. Votes Necessary to Confirm the Plan

*What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

*Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

holders of claims and equity interests that have been disallowed by an order of the Court;
holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
holders of claims or equity interests in unimpaired classes;;
holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;;and holders of claims or equity interests in classes that do not receive or retain any value under the Plan; administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

***The creditors which were disputed and failed to filed claims, have their interests extinguished by the Plan. See Plan Article V.***

*Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non--accepting classes, as discussed later.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one--half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two--thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two--thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

*2. Treatment of Nonaccepting Classes "Cram Down"*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non--accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non--accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non--accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

**C. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit A.

### D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtors will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. See exhibit B.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent will pay all allowed claims by sale or refinancing.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V. EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTOR

On the confirmation date of this Plan, the debtors will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan;; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure;; or (iii) of a kind specified in § 1141(d)(6)(B).

### B. Modification of Plan

The Plan Proponents may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re voting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted 12/26/25

BLUE LAGOON (1), LLC and 7 AT BLUE LAGOON (2), LLC
By: /s/ Adeena Weiss
The Plan Proponent

s/: Joel M. Aresty, Esq.
Joel M. Aresty P.A.
FL Bar 197483
Signature of the Attorney for the Plan Proponent
JOEL M. ARESTY, P.A.
Board Certified Business
Bankruptcy Law
Counsel for Debtor
309 1st Ave S
Tierra Verde FL 33715
Phone: 305-904-1903
Fax: 800-559-1870
E-mail: Aresty@Mac.com

EXHIBITS

Exhibit A

Lagoon payoff analysis – liquidation analysis

| | | |
|---|---|---|
| Appraisal value est | | 99000000 |
| RIC Payoff claim 4 | | (22,000,000) |
| Karp claim 1 | | (463,257) |
| Schlesinger claim 2 | | (1,704,000) |
| Fig 1706 LLC claim 5 2024 | | (131,832) |
| MiamiDade Tax claim3 2025 | | (139,538) |
| Luca 2 LLC tax cert 2023 | | (117,088) |
| Dervishi claim 6 | | (185,516) |
| Equity | | 74,258,769 |
| | | |
| | | |

Estate appears solvent and pays 100%

Exhibit B

Funds needed for confirmation on the effective date of the Plan

| | | |
|---|---|---|
| RIC Payoff claim 4 | | (22,000,000) |
| Karp claim 1 | | (463,257) |
| Schlesinger claim 2 | | (1,704,000) |
| Fig 1706 LLC claim 5 2024 | | (131,832) |
| MiamiDade Tax claim3 2025 | | (139,538) |
| Luca 2 LLC tax cert 2023 | | (117,088) |
| Dervishi | | (185,516) |
| Total* | | (24,741,231) |
| *Joel Aresty est $100,000 | | |

Exhibit C
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI

In re: Case 25-21286 RAM
7 AT BLUE LAGOON (1), LLC
In re: Jointly administered with
7 AT BLUE LAGOON (2), LLC Case 25-21287 RAM
Debtors
_______________________________/

**BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN**

***TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE (AS SET PURSUANT TO LOCAL RULE 3018-1)***

*The plan filed by Debtor can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*
*Creditor: ______________________________________________________for the following type of claim placed in the indicated class in the indicated amount:*

| ***TYPE OF CLAIM*** | ***CLASS IN PLAN*** | ***AMOUNT OF CLAIM*** |
|---|---|---|
| Secured | | $ |
| Unsecured | | $ |
| Equity Security Holder | | $ |

The undersigned [Check One Box] __ Accepts __ Rejects
the plan for reorganization of the above-named debtor.

Signed:
Print Name:
Address:
Phone:
Date:

**FILE THIS BALLOT BY**

with: **Office of the Clerk C. Clyde Atkins United States Courthouse 301 North Miami Avenue, Room 150 Miami, Florida 33128 305) 714-1800**
and JOEL ARESTY aresty@icloud.com

**If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote. Contact the plan proponent regarding incorrect or insufficient ballot(s).**